UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY ALLEN FOX,<br><br>             Plaintiff,<br><br>  vs.<br><br>RANDY BLADES, Warden at Idaho State Correctional Institution, et al.,<br><br>             Defendants. | NO.  CV-05-282-S-LRS<br><br>**ORDER GRANTING PHS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

BEFORE THE COURT is Prison Health Services Defendants' Motion for Summary Judgment (**Ct. Rec. 108**).  The current motion involves the following Defendants:  Prison Health Services, Dr. Donald Baker, Dr. Jodean Elliott-Blakeslee, Dr. Rebekah Haggard, Larry Hynes, Michael McCary, David Shuey, Rona Siegert, Erika Speed, David Tomey and Robert Tucker, (known collectively as "the PHS Defendants").[1]

///

**I. BACKGROUND**

---

[1] Plaintiff's Motion to Dismiss (**Docket No. 128**) was **GRANTED** by the Idaho Court.  *See* Docket 149.  Therefore, claims against the following defendants are dismissed:  all claims against Donald Baker, all claims against Rebekah Haggard, all claims against David Shuey, claims against David Tomey in his capacity as a PHS employee only, and claims against Jodean Blakeslee in her capacity as a PHS employee only.

ORDER - 1

On July 12, 2005, Plaintiff, a pro se prisoner filed his Complaint in this matter (Ct. Rec. 3), in which he alleged that Prison Health System Officials were deliberately indifferent to his medical needs. In his Amended Complaint, Plaintiff alleged that this Court also had jurisdiction over his state law claim that the Prison Health System Officials acted negligently in responding to his medical complaints. *See* Amended Complaint at 2. This case stems from an incident that occurred on September 30, 2004, in which Plaintiff claims he was struck by a car driven by Prison Health Services staff member Michael McCary. This occurred when the medical cart that Defendant McCarty was driving struck a rail causing the cart to hit the Plaintiff. Ct Rec. 108-5, page 63, lines 16-19. Plaintiff told Defendant McCary that he was "okay" after the incident. Plaintiff was told that if he needed assistance, he should contact the medical department.

According to Plaintiff's deposition testimony, the next date on which the Plaintiff sought medical attention was on October 2, 2004, when he complained of back pain. Plaintiff was examined on that day and given Tylenol for the discomfort. Exhibit A, Page 77, Docket Report 108-5. Plaintiff was seen by the medical department again on October 10, 2004 during which he received a prescription for Naprosyn 374 milligrams as well as a dose of Flexerill. Plaintiff also had x-rays of his back taken. Plaintiff's Dep. p. 80, lines 6-8. On October 11, 2004, Plaintiff submitted a request to have an MRI. Plaintiff's x-rays were then sent to an independent radiology group in Texas for review. The radiologists in Texas made the following finding: "If the patient remains symptomatic, would obtain a CT

ORDER - 2

Scan." Ct. Rec. 108-6 Exhibit H. Plaintiff was also issued a lower bunk memo.

Plaintiff saw Dr. Haggard on November 1, 2004. During that session, the doctor prescribed two pain killers. According to a kite (letter) submitted to medical by Plaintiff, he did not take the pain medication because he would have to go to breakfast to get the medication. On December 21, 2004, the time of day for Plaintiff to take his medication (through pill line), were changed to accommodate Plaintiff's schedule and wishes. Docket No. 108-6, Exhibit M and U. Plaintiff was again examined by a doctor for his complaint of back pain, and was given a CT Scan at St. Alphonsus Hospital. Docket No. 108-6, Exhibit Q. *See also* Plaintiff's Response. Docket 129-2 at 6. Plaintiff met with Dr. Haggard again on November 30, 2004, to go over the results of Plaintiff's tests. According to his medical records, Plaintiff was then prescribed more pain medication.

Plaintiff was examined by Dr. Haggard on December 14, 2004. Dr. Haggard told the Plaintiff that the results of his CT Scan were normal, and that the soft tissue injury to his back would take time to resolve. At that appointment, Dr. Haggard increased the Plaintiff's pain medication. Docket No. 180-5, Exhibit T. The record before this Court shows that the Plaintiff did not take his medication as prescribed. Plaintiff agrees that he did not always take his medicine, but asserts that he does not like to take crushed medicine.[2] Plaintiff's Response, Docket No. 129-2 at 10. Plaintiff again saw Dr.

---

[2] According to Defendants, narcotics are crushed when they are given in pill line to prevent inmates from exchanging or sharing medicine.

ORDER - 3

Haggard on December 28, 2004.  Plaintiff's dosage of pain was increased in response to Plaintiff's report of ongoing pain.

Plaintiff was seen by medical three times in January 2005.  Dr. Jodean Elliott-Blakeslee examined the Plaintiff on January 31, 2005.  During the course of the appointment, Defendant Blakeslee reviewed Plaintiff's medical records from the time of the incident with the medical cart to the present, and conducted a physical examination of the Plaintiff.  Plaintiff received the diagnosis of fibromyalgia and was given new medication in addition to his pain medication.  Docket No. 180-6, Exhibit AA.  According to Plaintiff's deposition testimony, Dr. Blakeslee told him that Elavil has been known to help with the pain symptoms of fibromyalgia.  Plaintiff's Dep p. 114, lines 21-25.

Plaintiff again kited medical on March 19, 2005.  Plaintiff saw a physician's assistant on that day.  Mr. Fox had another appointment with Dr. Blakeslee on April 1, 2005 in which he complained that the pain medication made him nauseated.  He was then given medication to control the nausea and given a prescription for Vicodin, which he stated in his deposition gave him more relief than the Ultram he had been taking.  Plaintiff's Dep. p. 119-120.

On May 10, 2005, Plaintiff was again seen by medical and his pain medication was changed from Vicodin to Darvacet.  Plaintiff visited medical on May 24, 2005 for back pain and his medication was changed.  On June 22, 2004, Plaintiff saw a physician's assistant, who

///

///

///

ORDER - 4

prescribed Toradol injections for Plaintiff's back pain.[3]  Docket No. 108-6, Exhibit HH.

## II. DISCUSSION:

**A. Legal Standards**

### 1. *Summary Judgment*

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56c.  The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine,' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995).

---

[3]This encompasses the time period of Plaintiff's Complaint as it relates to Prison Health Systems Defendants.  The PHS contract to provide medical services for the Idaho Department of Corrections ended on July 11, 2005.

ORDER - 5

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists will not preclude the use of summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### *2.   42 U.S.C. § 1983*

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

### *3.   Eighth Amendment Standard*

When an inmate plaintiff is claiming an Eighth Amendment violation as a result of a medical condition, the plaintiff must show

ORDER - 6

deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976). A serious medical need exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 838-40 (1994). Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health. *Id.* at 835. A court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.2d 1074, 1077 (9th Cir. 1995).

A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding what treatment is proper and necessary give rise to a § 1983 claim. *Id.;* see also *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970). Moreover, prison authorities have "wide discretion" in the medical treatment afforded prisoners. *Stiltner v. Rhay*, 371 F.2d 420, 421 (9th Cir. 1971), cert. denied, 387 U.S. 922 (1972).

Inmates alleging Eighth Amendment violations based upon unsafe prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at

ORDER - 7

834; *Wallis v. Baldwin*, 70 F.3d 1074, 176 (9th Cir. 1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Farmer*, 511 U.S. at 838-40; *Wallis*, 70 F.3d at 1077.

The Eighth Amendment standard requires proof of both the objective and subjective component. *Hudson v. McMillian*, 503 U.S. 1 (1992). First, the deprivation alleged must objectively be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Only extreme deprivations are adequate to satisfy the objective component of any Eighth Amendment claim." *Rish v. Johnson*, 131 F.3d 1092, 1096 (9th Cir. 1997).

In proving the objective component an inmate must establish that there was both some degree of actual or potential injury, and that society considers the [acts] that the plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly [to those acts]." *Helling,* 509 U.S. at 36; see also *Estelle v. Gamble, supra*; and *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993) (stating that there must be evidence of a serious physical or emotional injury resulting from the challenged condition).

Second, is the subjective component that the prison official possesses a sufficiently culpable state of mind: "deliberate indifference to inmate health and safety." With regard to deliberate indifference a prison official is not liable "unless the official

ORDER - 8

knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  The subjective component requires proof that the official was (1) aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm; (2) actually made the inference that the substantial risk of serious harm to the Plaintiff existed; and (3) knowingly disregarded this risk.  *Id.*  The Court in Farmer explained that:

> prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.  In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

*Farmer*, 511 U.S. at 844.

If either of these components is not established, the court need not inquire as to the existence of the other.  *Helling, supra.*

   This Court finds that Plaintiff has failed to state a claim under the Eighth Amendment as to any PHS Defendant.  Despite Plaintiff's assertions to the contrary, the record demonstrates that Defendants were responsive to Plaintiff's complaints through numerous medical appointments and tests for Plaintiff's back pain.

   Plaintiff testified during his deposition that he had no serious medical ailment at the time of the accident, and that Mr. McCary was trying to avoid coming into contact with inmates on the breezeway.

ORDER - 9

Plaintiff's Deposition, p. 145 at lines 5-13.  It appears that Plaintiff's claim that Mr. McCary was deliberately indifferent to Mr. Fox's safety because he was deliberately indifferent to the policy that the medical carts were not to be driven during yard movements absent an emergency.  *See* Defendant's Reply [Docket No. 141] at 6. This allegation alone is insufficient to state a claim under the Eighth Amendment.  Defendants noted in their opening brief supporting the summary judgment motion, the only contact Mr. Fox had with Defendant McCary was on the day Plaintiff was hit with the medical golf cart.  All claims against Mr. McCarty are therefore dismissed.

In the case at bar, it appears that Mr. Fox is suing several of the Defendants based solely on their position within the Idaho Department of Corrections.  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Rather, each defendant must have personally participated in the acts alleged.  *Id*.  Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

According to Plaintiff Fox, Larry Hynes "was the administrator of the medical department at the ISCI and supervisor of all subordinates of medical and was immediately responsible for the implementation of policy."  Plaintiff's Response to Defendants' Summary Judgment [Docket No. 129-2] at 23.  Plaintiff also alleges Mr. Hynes told him there was an unwritten rule against operating the cart during yard movement."

ORDER - 10

*Id.*  These claims considered in the light most favorable to the Plaintiff, are not sufficient sustain an Eighth Amendment claim. Therefore, Plaintiff's claims against Defendant Hynes are dismissed.

Plaintiff further claims that Rona Siegert violated Plaintiff's due process rights by re-directing certain health care forms, and returning certain forms instructing Plaintiff to fill out a health care co-pay form.  Docket No. 129-2 at 27.  When asked at his deposition, Plaintiff said that Defendant Siegert acted as a "gatekeeper" because she decided where his medical concern forms should go.  Plaintiff's Dep. at p. 151, lines 23-25 and p. 152, lines 1-7.  According to Defendants, these are referred to as care forms and concern medical issues, not inmate requests for medical care. Defendant's Reply [Docket No. 141] at 7.  *See also* Plaintiff's Dep p. 53 lines 2-23.  It appears that Plaintiff is suing Defendant because of her position, not her actions.  As explained above, § 1983 claims do not allow for vicarious liability.  However, setting aside the issue of vicarious liability, and liberally construing Plaintiff's claims concerning Defendant Siegert's actions, Plaintiff has failed to show that his constitutional rights were violated.  Therefore Defendant Siegert is dismissed from this case.

The Court now turns to Defendant Robert Tucker, the person who treated Plaintiff after he was struck by the medical cart, Plaintiff claims that Defendant Tucker should have known that Plaintiff "was in shock and could have been seriously injured."  Plaintiff's Response, Docket No. 129-2.  There is nothing before this Court to suggest that Plaintiff was in shock after the accident.  However, even assuming he were, Plaintiff's allegations do not constitute deliberate

ORDER - 11

indifference under the Eighth Amendment.

Plaintiff claims that Defendant Speed did not give him his "Hour of Sleep Medication" from December 21 through December 25. Defendants admit that Defendant Speed did not give Plaintiff the medication because she was concerned about him taking the medication too close together. [Docket No. 141 at 9-10. Defendant Speed consulted with a physician's assistant about Mr. Fox's situation, and then gave him the medication. Plaintiff's claim as to Defendant Speed fails as Plaintiff cannot show Defendant Speed was deliberately indifferent to a serious medical need.

For the reasons explained above, the PHS Defendants are entitled to summary judgment dismissal of all of Plaintiffs claims, and judgment as a matter of law. Defendants' Motion for Summary Judgment [**Docket No. 108**] is hereby **GRANTED**.

**IT IS SO ORDERED**. The District Court Executive directed to enter this Order and forward a copy to counsel and Plaintiff, and **ENTER JUDGMENT** in favor of Dr. Donald Baker, Dr. Jodean Elliott-Blakeslee, Dr. Rebekah Haggard, Larry Hynes, Michael McCary, David Shuey, Rona Siegert, Erika Speed, David Tomey, Robert Tucker, and Prison Health Systems.[4]

**DATED** this  29th  day of March, 2007.

*s/Lonny* **R. Suko**

LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

---

[4] As stated in this order's first footnote, some of the PHS Defendants have already been dismissed. However, out of an abundance of caution, the Court has listed all of the PHS Defendants who brought this motion for summary judgment. Prison Health Systems is dismissed as it is not a proper party in a section 1983 action.

ORDER - 12